UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIANNE KLASINSKI,<br><br>                    Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>                    Defendant. | Case No. 3:12-cv-05836-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 17, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of April 15, 2007, due to depression, fibromyalgia, a back injury, and a spinal fusion. See ECF #11, Administrative Record ("AR")

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**
ORDER - 1

65, 213.  Both applications were denied upon initial administrative review on November 12, 2008, and on reconsideration on April 1, 2009.  See AR 65.  Upon plaintiff's request a hearing was held before an administrative law judge ("ALJ") on September 14, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 15-59.

In a decision dated December 20, 2010, the ALJ determined plaintiff to be not disabled.  See AR 65-77.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 12, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On September 18, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  See ECF #3.  The administrative record was filed with the Court on December 11, 2012.  See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for and award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record, including that from Benedict Garry, M.D., Terilee Wingate, Ph.D., Thomas Rafferty, M.D., Keith J. Kreuger, Ph.D., John F. Robinson, Ph.D., and Bruce Eather, Ph.D.; (2) in discounting plaintiff's credibility; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, the Court agrees that the ALJ erred by failing to fully take into account the mental functional assessment provided by Drs. Robinson and Dr. Eather, and thus in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and therefore that the ALJ erred in determining plaintiff to be not disabled.  Accordingly, the Court finds that in light of those errors defendant's decision to

ORDER - 2

deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

ORDER - 3

I.      The ALJ's Evaluation of the Opinion of Dr. Robinson and Dr. Eather

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

---

. . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The record contains a mental residual functional capacity assessment ("MFRCA") form completed by Dr. Robinson, a non-examining consultative psychologist, in Section I of which he found plaintiff to be moderately limited in a number of mental functional abilities, including the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. See AR 566-67.  In Section III of the MFRCA form, Dr. Robinson found plaintiff to

ORDER - 5

be "capable of remembering and performing simple repetitive tasks and some complex tasks," that she "need[ed] limited contact with [the] general public and coworkers due to her irritability," that her "depression would not be enough to keep her from maintaining regular attendance in the workplace," and that she "ha[d] problems with stress" but that "repetitive work would decrease the stress." AR 568.  The findings contained in the MFRCA form were affirmed by Dr. Eather. See AR 602.  In her decision, the ALJ summarized the Section III findings of Drs. Robinson and Eather, and then stated she gave them "significant weight" because they were "consistent with the objective medical evidence." AR 75.

In support of her argument that the ALJ failed to properly consider the medical evidence from Dr. Wingate, plaintiff points to the Section I findings of Dr. Robinson and Dr. Eather that she was moderately limited in a number of mental functional abilities.  As defendant points out, however, pursuant to the directive contained in the Commissioner's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC[']**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original).  While is true that the POMS "does not have the force of law," the Ninth Circuit recognizes it as "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).  Nor does the undersigned find or plaintiff point out any valid reasons for not following that directive in this case.

The Court thus finds no error in the ALJ's failure to specifically adopt or address the moderate mental functional limitations indicated in Section I of the MFRCA form.  That being said, the Court does find that the ALJ failed to fully take into account all of the mental functional limitations set forth in Section III thereof in assessing plaintiff's RFC.  Namely, while the ALJ

ORDER - 6

notes Dr. Robinson's opinion that plaintiff should have limited contact with both the general public and co-workers – which is in line with the moderate limitation in those areas indicated in Section I of the MFRCA form – she only found her to be limited in regard to the former. See AR 70, 75. This despite stating she was giving significant weight to the findings of Dr. Robinson and Dr. Eather. Because the ALJ failed to explain why she rejected this significant probative evidence of plaintiff's ability to get along with co-workers, she erred. See Vincent, 739 F.3d at 1394-95; Cotter , 642 F.2d at 706-07; Garfield, 732 F.2d at 610.

II.     The ALJ's Step Five Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In

ORDER - 7

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In terms of plaintiff's mental residual functional capacity, the ALJ determined that she could "**perform simple and some complex tasks**" and "**have occasional superficial contact with the general public**." AR 70 (emphasis in original). As explained above, however, the ALJ erred in failing to explain why she did not adopt the opinion of Dr. Robinson and Dr Eather that plaintiff should have limited contact with co-workers, despite giving that opinion significant weight. Because of this error, it is far from clear that the ALJ's assessment of plaintiff's RFC is completely accurate and thus supported by substantial evidence.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

ORDER - 8

(citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same mental functional limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 45-46.  In response to that question, the vocational expert testified that an individual with those limitations would be able to perform other jobs. See AR 46-47.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 75-76.  But because the hypothetical question the ALJ posed was based on an assessment of plaintiff's RFC that may not be fully accurate, the testimony of the vocational expert cannot be said to be supported by substantial evidence at this time, nor can the step five determination of the ALJ which is based on that testimony.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

ORDER - 9

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental residual functional capacity, and therefore her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is appropriate in this case.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 21st day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 10